UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| GARNETT VAUGHN,<br><br>    PLAINTIFF,<br><br>v.<br><br>BRANCH BANKING AND TRUST CO., et al.,<br><br>    DEFENDANTS. | CIVIL ACTION NO. 3:18-CV-444-GNS<br><br>*Electronically Filed* |

## BRANCH BANKING AND TRUST CO.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Garnett Vaughn does not claim to have paid the amount he owed on his credit card debt. He also does not claim that BB&T ever instructed him to stop making payments or told him he no longer owes his debt. Indeed, Vaughn does not even claim that he has paid income tax on the debt. Nonetheless, he now claims that he no longer needs to pay—and that he should have a clean credit report—because BB&T charged off the debt and issued a Form 1099-C. Vaughn's illogical theory—that debtors can simply stop paying on their credit card to obtain a discharge of their obligation *and* a clean credit report—has properly been rejected by the IRS and the vast majority of courts.

Vaughn's response asks the Court to adopt a baseless rule rejected by the lone federal appellate court and nearly every federal district court to consider it. Though he offers zero facts to support his claims beyond the Form 1099-C, he pleads for the opportunity to seek non-existent discovery concerning the status of his delinquent loan. The Court should reject both of these pleas as a creditor's decision to charge off a delinquent loan does not allow non-paying borrowers to avoid their contractual obligations or to obtain clean credit reports,

and plaintiffs who have failed to state a plausible claim for relief are not entitled to discovery in the hopes of "making a case." The Court should dismiss Vaughn's claims against BB&T.

## ARGUMENT

I. **The Court Should Follow the Vast Majority of Courts and Hold That Issuance of a Form 1099-C Alone Does Not Establish a Discharge of Indebtedness.**

The vast majority of courts—including the only federal appellate court—to address the issue have held that issuance of a Form 1099-C and selection of subpart G is not evidence of a discharge. *See, e.g.*, *FDIC v. Cashion*, 720 F.3d 169 (4th Cir. 2013). (*See* BB&T Mot. at 5–10.) Only a handful of bankruptcy and state intermediate appellate courts—and apparently zero federal district courts or courts of appeal—have adopted Vaughn's position that *In re Reed*, 492 B.R. 261 (Bankr. E.D. Tenn. 2013), should control.(Resp. at 11-14.)

Creditors file a Form 1099-C under the IRS reporting regulations even in cases where a debt has not actually been discharged. (BB&T Mot. at 5–7.) The instructions on the Form 1099-C contemplate situations like this one where "the debt has not actually been discharged." (*Id.* at 7.) This is because the IRS treats a Form 1099-C as a reporting obligation and not as a means of effectuating the discharge of debt. Indeed, twice the IRS itself has stated that a creditor's issuance of a 1099-C *does not* constitute evidence of debt forgiveness and does not preclude further collection efforts (including credit reporting). In other words, the IRS has stated that the issuance of a 1099-C on its own is not proof of discharge. This interpretation is entitled to *Skidmore* deference.[1] *See, e.g.*, *Mennes v. Capital*

---

[1] *Skidmore* deference arises from the Supreme Court case *Skidmore v. Swift & Co.*, 323 U.S. 134 (1994). In *Skidmore*, the Court explained that agency "rulings, interpretations and opinions . . . constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* at 140. The Court held that, while not binding, such interpretations have the power to persuade, and the weight given such interpretations depends on, among other things, "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements . . . ." *Id.*

*One, N.A.*, No. 13-cv-882-bbc, 2014 WL 1767079, 2014 U.S. Dist. LEXIS 61729, at *14–16 (W.D. Wis. May 5, 2014). Consistent with this interpretation, the clear majority of courts to address the issue have also concluded that a 1099-C, standing alone, does not constitute a discharge of indebtedness. (BB&T Mot. at 8–9.)

This is fatal to Vaughn's FCRA claims. Because issuance of a Form 1099-C itself is not proof of debt discharge, and Vaughn has not alleged any other facts to support his theory of discharge, Vaughn has failed to state a claim. Vaughn does not claim that he ever repaid his debt. Nor does he claim that BB&T ever told him his debt was forgiven. He does not even claim that he has paid income tax on the so-called forgiven debt. (Resp. at 4, 15.) It is not enough to allege that BB&T issued to him a Form 1099-C. *See Ingram v. Green & Cooper, Attys. L.L.P.*, No. 1:11-cv-03475-TWT-RGV, 2012 WL 1884598, 2012 U.S. Dist. LEXIS 71163, at *14–15 (N.D. Ga. Apr. 20, 2012) (dismissing the plaintiff's FDCPA claim on this basis); *Mennes*, 2014 U.S. Dist. LEXIS 61729, at *8–17 (dismissing the plaintiff's FCRA, FDCPA, and state-law claims on this basis). As this form is the only factual basis supporting Vaughn's FCRA claims, the complaint is deficient as a matter of law and should be dismissed for failure to state a claim.

Vaughn's claims of inequity ring hollow. Vaughn accumulated nearly $10,000 in credit card debt to BB&T. (Resp. at 4.) Indisputably, he (1) did not pay back that debt, (2) was not told that he no longer needed to pay back the debt, and (3) did not reach an agreement with BB&T to discharge the debt. It is inconceivable to believe that, "through the inexorable interplay of accounting and tax reporting requirements," his debt has been forgiven and he is entitled to a clean credit report he did not earn. *Kelley v. Wolpoff & Abramson, LLP*, 634 F. Supp. 2d 1202, 1211 (D. Colo. 2008) (rejecting as "ridiculous on its

face" and "incoherent in its explanation" the claim that subsection (g) of the tax reporting regulation can operate to extinguish delinquent credit card debt). As with any other consumer in the American credit reporting system, Vaughn's credit report should reflect the debts he actually incurred, the payments he did or did not make, and the debts he currently owes.

II.     **This Court's Opinion in *Baker* Does Not Support Vaughn's Claims.**

Vaughn's extensive reliance on this Court's opinion in *Baker*—which Vaughn concedes hinges on a judicial misstatement, (Resp. at 6–7)—is misplaced. In *Baker*, this Court explicitly declined to decide whether to follow the Fourth Circuit and every federal district court to consider the issue (adopting the defendants' position) or the handful of bankruptcy courts and intermediate state appellate courts (adopting the plaintiff's position) based on a mistaken reading of the Form 1099-C. *See Baker v. Am. Fin. Servs.*, No. 3:16-cv-00065-GNS, 2016 U.S. Dist. LEXIS 97040, at *7 (W.D. Ky. July 25, 2016) ("The Court finds it unnecessary to adopt either view in this case."). Recently, over BB&T's objection, Judge Simpson relied heavily on *Baker* in denying a motion to dismiss on a similar theory. *See Johnson v. BB&T*, 2018 U.S. Dist. LEXIS 159633 (W.D. Ky. Sept. 18, 2018).

This Court should clarify here that the selection of identifiable code G on an IRS Form 1099-C is not an admission of debt forgiveness by a creditor or evidence of debt forgiveness by a creditor. In *Baker*, though not confronted with the argument from the parties' briefs, this Court found an "***admission by the creditor within the Form 1099-C plausibly indicates discharge*** even if the mere filing of the form does not." *Id.* (emphasis added). As the basis for this "admission," this Court incorrectly found that the defendant "indicated in the Form 1099-C that *discharge by agreement of the parties* was the identifiable event which

triggered the filing by reference in the form to Subpart G of the regulation." *Id.* (emphasis added). Critically, identifiable code "G" (alleged to be selected on Vaughn's form) does not mean "discharge by agreement of the parties." That identifiable code is "F." *See* IRS Form 1099-C, Instructions Box 6 ("F" means "by agreement"); *see also* 26 C.F.R. § 1.6050P-1(b)(2)(F) (listing as an identifiable event "an agreement . . . to discharge indebtedness at less than full consideration"). Based on this incorrect belief that there was an "agreement of the parties" to discharge the debt, this Court ruled that the defendant "appears to have acknowledged on the face of the Form 1099-C that [the plaintiff's] debt had been discharged." *Id.*

The IRS has taken the opposite position, and the forms and regulations themselves support its reading that the forms do not contain admissions. Citing the regulations outlined in BB&T's opening motion, the IRS letters—which *Johnson* found were "entitled to respect under Skidmore"—state that the IRS "***does not view a Form 1099-C as an admission by the creditor that it has discharged the debt*** and can no longer pursue collection**.**" IRS Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005). The IRS issued a clear response to a creditor concerned that "courts may view the filing of a Form 1099-C as a written admission that the creditor discharged the debt, and that debtors would be willing to pay after [a creditor] files a Form 1099-C." *Id.*[2] And as BB&T's opening brief explained, the forms themselves here contemplate that the debt may not be discharged. (*See* BB&T's Mot., at 7.)

---

[2] Vaughn's assertion that BB&T somehow misled Judge Simpson or made a "misleading argument" by making *the same argument that it makes here* (that is supported by the vast majority of case law and two IRS letters) is absolutely false. As here, BB&T in the *Johnson* case argued that this Court had mistakenly found that subpart G indicated an "agreement of the parties" to discharge the debt. And as here, BB&T argued that a correction of this misreading should lead to a different result on the motion to dismiss. BB&T once again respectfully brings this argument again to this Court's attention in the hopes that it will provide clarity on the matter.

In this case, there is no "acknowledgement" on the face of the forms or anywhere else. Had there been an agreement between the parties to settle the debt, perhaps Vaughn would have a point. Under that alternative set of facts, perhaps BB&T could have been accused of acknowledging forgiveness of a portion of the loan by entering an agreement. But no such agreement exists here. Vaughn does not allege (and cannot allege) that he and BB&T agreed to discharge the debt, or that BB&T agreed to accept anything less than the full amount Vaughn owes. He also does not allege that BB&T selected the identifiable code "F" to indicate that such an agreement occurred.

### III.    Vaughn Is Not Entitled to Discovery.

Vaughn's argument that he should be entitled to seek (nonexistent) facts that may support his claims fails. (Resp. at 14.) A plea for discovery cannot overcome a Rule 12 motion. *See, e.g.*, *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (explaining that a "plaintiff may not use the discovery process to obtain" the facts needed to state a claim for relief "after filing suit"); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) ("there is no general right to discovery upon filing of the complaint. The very purpose of [Rule] 12(b)(6) 'is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'"); *Taylor v. Brandon*, No. 3:14-cv-588-DJH-DW, 2016 U.S. Dist. LEXIS 6275, at *5 (W.D. Ky. Jan. 20, 2016) ("[A] plaintiff whose complaint is deficient is not entitled to a fishing expedition for facts to support it."); *Sudamax Industria E Comercio De Cigaros, Ltda v. Buttes & Ashes, Inc.*, No. 1:05-cv-60-M, 2006 U.S. Dist. LEXIS 90231, at *6–7 (W.D. Ky. Dec. 8, 2006) (granting motion to dismiss and rejecting request for discovery to substantiate claims).

As explained above, the mere issuance of a Form 1099-C is not proof of a discharged debt. *Ingram*, 2012 U.S. Dist. LEXIS 71163, at *14–15; *Mennes*, 2014 U.S. Dist. LEXIS 61729, at *8–17.[3] Yet this is the *sole factual basis* on which Vaughn relies to suggest BB&T discharged his debt. Nothing else in the complaint supports this claim. Vaughn *does not even claim* that he has paid income tax on the debt. (Resp. at 4, 15.) If the sole factual allegation in the complaint to support a legal conclusion is insufficient as a matter of law, then the complaint must be dismissed. The Court should not permit these claims to survive based on an unfounded argument that undefined discovery will make his case.

## IV. Vaughn's State Law Claims Should Be Dismissed With Prejudice.

In *Carroll v. Midland Funding, LLC*, 2016 U.S. Dist. LEXIS 97037, at *7 (W.D. Ky. July 25, 2016) (Stivers, J.) and *Baker*, 2016 U.S. Dist. LEXIS 97040, at *8 (Stivers, J.), this Court rejected attempts to bring preempted negligence and defamation claims in nearly identical complaints. This Court dismissed the state law claims because (as here) the plaintiffs alleged no facts to plausibly support their conclusion that the furnisher acted willfully or maliciously *prior to* receiving notice of a dispute. *Carroll*, 2016 U.S. Dist. LEXIS 97037, at *7–8; *Baker*, 2016 U.S. Dist. LEXIS 97040, at *9–10. (*See* DN 4-1 ¶¶ 24–33, 67 (alleging that BB&T willfully reported false information but providing no facts to support willful or malicious misconduct prior to receipt of Vaughn's dispute).) Vaughn's complaint is nearly identical, and it should likewise be dismissed.[4]

---

[3] While the court in *Mennes* dismissed the plaintiff's complaint without prejudice to allow the plaintiff to file an amended complaint, when the plaintiff failed to allege anything more, the *Mennes* court then dismissed the FCRA claim with prejudice. *Mennes v. Capital One, N.A.*, No. 13-cv-822-bbc, 2014 WL 5106717, 2014 U.S. Dist. LEXIS 144330, at *6–7 (W.D. Wis. Oct. 10, 2014).

[4] Vaughn's assertion that "this Court" decided *Eddins* and *Stafford* is incorrect. (Resp. at 15–16.) Moreover, the court in *Eddins* in fact dismissed the plaintiff's negligence claim for failure to sufficiently allege a malicious or willful intent. *Eddins v. Cenlar FSB*, 964 F. Supp. 2d 843, 853 (W.D. Ky. 2013). And in *Stafford*, the plaintiff did not assert a claim for negligence, and the court dismissed the plaintiff's defamation claim as preempted. *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 788–89 (W.D. Ky. 2003). In any event, as detailed above,

In the alternative, as explained in BB&T's motion, this Court should consider adopting the preemption approach outlined in *Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011), *Morgan v. HSBC Mortg. Servs.*, 930 F. Supp. 2d 833, 837 (E.D. Ky. 2013), and *Sparks v. Countrywide Home Loans, Inc.*, 2015 U.S. Dist. LEXIS 146986, at *16 (E.D. Ky. Oct. 29, 2015). (BB&T Mot. at 10–14.) A growing number of courts across the country are adopting this approach for all of the reasons explained in *Purcell*, 659 F.3d at 625–26. Under this approach, as with the approach described in *Carroll* and *Baker*, Vaughn's negligence and defamation claims would be subject to dismissal.

The Court should reject Vaughn's throwaway argument that his state law claims might survive if BB&T denies receiving his May 2018 dispute. As an additional dispositive matter, Vaughn fails to explain *why* his state law claims should proceed in that event. In addition, BB&T has not denied receiving Vaughn's dispute. Vaughn's state law claims should be dismissed.

## CONCLUSION

Vaughn's debt was not extinguished, and mere issuance of a 1099-C does not establish as much. For the foregoing reasons and the reasons stated in BB&T's motion to dismiss, the Court should dismiss all of Vaughn's claims against BB&T with prejudice.

---

the state-law claims in the two cases with nearly identical complaints that this Court has addressed have been dismissed.

*/s/ Neal Bailen*
Neal Bailen
Carolyn Purcell
nbailen@stites.com
cpurcell@stites.com

STITES & HARBISON PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone:  (502) 587-3400

Counsel for Branch Banking and Trust Co.

## CERTIFICATE OF SERVICE

      I hereby certify that on November 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

                                              */s/ Neal Bailen*
                                              Counsel for Branch Banking and Trust Co.

BB015:181397:1256112:2:LOUISVILLE