UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00444-GNS

GARNETT VAUGHN                                                                    PLAINTIFF

v.

BRANCH BANKING & TRUST CO.;
TD BANK USA, N.A.;
CREDIT FIRST N.A.; and
EXPERIAN INFORMATION SOLUTIONS, INC.                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 25, 30). The motions are ripe for decision. For the reasons stated below, the motions are **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

This action concerns debt related to two credit card accounts opened by Plaintiff in April and November 2012 with Defendants Branch Banking and Trust Co. ("BBT") and TD Bank USA, N.A. ("TD"). (Am. Compl. ¶¶ 24, 34, DN 18). Plaintiff alleges BBT charged off credit card debt worth $10,598.00 in September 2013 and that TD charged off debt worth $2298.00 in September 2014. (Am. Compl. ¶¶ 25, 35).

In July 2016,[1] BBT issued a Form 1099-C to Plaintiff and presumably filed the form with the Internal Revenue Service ("IRS"). (Pl.'s Resp. Defs.' Mot. Dismiss 4, DN 36 [hereinafter Pl.'s

---

[1] Plaintiff's Amended Complaint indicates he was forwarded the 1099-C form in 2018. (Am. Compl. ¶ 26). In his Response, however, Plaintiff indicates that he received the form in July of

Resp.]). The notice contains the heading, "Cancellation of Debt," and is marked with the identifiable event "G."[2] (Pl.'s Resp. Def's Mot. Dismiss Ex. A, DN 36-1). After receiving the Form 1099-C, Plaintiff alleges BBT did not further attempt to collect the debt and, as a result of this discharge, he owes income tax for the discharged amount. (Am. Compl. ¶¶ 26-27).

In May 2018, Plaintiff was in the process of securing a home mortgage when he learned BBT and TD were reporting debts as past due to the Credit Reporting Agency ("CRA") Defendants. (Am. Compl. ¶¶ 24, 34). Plaintiff immediately filed disputes with the CRAs concerning these tradelines. (Am. Compl. ¶¶ 28, 36). Plaintiff alleges that the CRAs informed BBT and TD Bank of Plaintiff's disputes with their respective reports, and both BBT and TD Bank independently verified their reports as accurate. (Am. Compl. ¶¶ 30, 38).

The Amended Complaint accuses Defendants of negligence, defamation and negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* for their handling of these disputed debts. (Am. Compl. ¶ 1). Plaintiff alleges the Defendants failed to investigate and correct his credit report and falsely reported delinquent debts. (Am. Compl. ¶m 1).

Defendants BBT and TD move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6). (Def.'s Mot. Dismiss, DN 25 [hereinafter BBT's Mot.]; Def.'s Mot. Dismiss, DN 30 [hereinafter

---

2016. (Pl.'s Resp. Defs.' Mots. Dismiss 4, DN 36). The date on the 1099-C form at issue is July 25, 2016. (Pl.'s Resp. Defs.' Mots. Dismiss Ex. A, DN 36-1). Accordingly, the Court will use the date in Plaintiff's Response and the Form 1099-C.

[2] This identification refers to 26 C.F.R. § 1.6050P-1, which requires certain entities discharging debt to file an "information return" on a Form 1099-C with the IRS. 26 C.F.R. § 1.6050P-1(a). The requirement for filing a Form 1099-C is triggered upon the happening of one of nine "identifiable events" provided in 26 C.F.R. § 1.6050P-1(b)(2)(i)(A)-(H). The relevant identifiable event for this matter is Code G, which signifies: "A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt." 26 C.F.R. § 1.6050P-1(b)(2)(i)(G).

TD's Mot.]). In its motion, BBT argues that the Form 1099-C does not indicate that debt has been discharged, and by relying on this form, Plaintiff's pleadings are thus insufficient to state a claim under the FCRA because he still owes the debt. (BBT's Mot. 1). In its motion, TD Bank argues it cannot be liable under the FCRA because its report was accurate. (TD's Mot. 1). Regarding his state law claims for negligence and defamation, both Defendants argue the FCRA preempts these state claims. (BBT's Mot. 2; TD's Mot. 6).

## II. JURISDICTION

The Court has jurisdiction over this controversy because it arises under the laws of the United States. 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering Defendants' Motions to Dismiss, the Court will "accept all the Plaintiff's factual allegations as true and construe the complaint in the light most favorable to the Plaintiff[]." *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

## IV. DISCUSSION

The FCRA was enacted "to promote 'efficiency in the Nation's banking system and to protect consumer privacy.'" *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 781 (W.D. Ky. 2003) (quoting 15 U.S.C. § 1681(a)). The FCRA places distinct obligations on CRAs, users of consumer reports, and furnishers of information to consumer reporting agencies. *Id.* at 782 (citations omitted). Furnishers of financial information to CRAs, like BBT and TD, have responsibility to refrain from reporting inaccurate information and to correct inaccurate information. *See* 15 U.S.C. § 1681s-2(a). An affected consumer is permitted to "bring a private cause of action against a furnisher of credit information for either negligent, § 1681o, or willful, § 1681n, violations of the FCRA." *Stafford*, 262 F. Supp. 2d at 783. "[A] consumer may still bring an action proceeding under state common law for defamation, slander or invasion of privacy, but only if the consumer proves malice." *Id.* at 782.

### A. IRS Form 1099-C

BBT urges the Court to adopt the approach several courts have employed to find that the Form 1099-C does not have the legal effect of discharging a debt. (BBT's Mot. 8). Those courts hold that the filing of a Form 1099-C is irrelevant or insufficient for determining discharge. *See, e.g.*, *FDIC v. Cashion*, 720 F.3d 169, 179 (4th Cir. 2013); *Ware v. Bank of Am. Corp.*, 9 F. Supp. 3d 1329, 1340-41 (N.D. Ga. 2014); *Mennes v. Capital One, N.A.*, No. 13-cv-822-bbc, 2014 WL 1767079, at *16 (W.D. Wis. May 5, 2014); *Lifestyles of Jasper, Inc. v. Gremore*, 299 S.W.3d 275, 276-77 (Ky. App. 2009). This position has been buttressed by guidance documents issued by the IRS that have been found persuasive in some courts. *See Cashion*, 720 F.3d at 179 (citing I.R.S. Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005); I.R.S. Info. 2005-0208, 2005 WL 3561136 (Dec. 30, 2005)). A minority of courts have reached a different conclusion and have held that the

Form 1099-C can serve as an admission by a lender that a borrower's obligation to pay has been discharged. *See*, *e.g.*, *In re Reed*, 492 B.R. 261, 268 (Bankr. E.D. Tenn. 2013); *In re Crosby*, 261 B.R. 470, 476-77 (Bankr. D. Kan. 2001).

This is not the first occasion this Court has considered this issue. In *Baker v. American Financial Services, Inc.*, No. 3:16-CV-00065-GNS, 2016 WL 4030964 (W.D. Ky. July 25, 2016), this Court determined that it did not need to adopt either position regarding the legal effect of the Form 1099-C. Relying on the standard of review at the motion to dismiss stage of litigation, this Court found that "an admission by the creditor *within* the Form 1099-C plausibly indicates discharge even if the mere filing of the form does not."[3] *Baker*, 2016 WL 4030964, at *3. This Court concluded that dismissing the case under the Fed. R. Civ. P. 12(b)(6) standard would be improper because the claim was plausible, and at that point in the proceedings, the Court was not weighing the evidence. *Id.*

This Court also considered this question in *Johnson v. Branch Banking & Trust Co.*, No. 3:18-CV-150-CRS, 2018 WL 4492478 (W.D. Ky. Sept. 19, 2018), and again relied on the procedural posture and pointed to the appropriate standard of review under Fed. R. Civ. P. 12(b)(6) to reach its conclusion. *Johnson*, 2018 WL 4492478, at *3-4. "Issuance of a Form 1099-C, standing alone, does not *prove* that the debt was discharged. However, to survive a motion to dismiss, [plaintiffs] do not need to *prove* anything. They must only state a claim to relief that is plausible on its face." *Id.* (internal citations and quotations omitted).

---

[3] BBT suggests that *Baker* does not apply to the present matter because this Court incorrectly identified Code G in *Baker*, when the identifiable event at issue in that case was actually Code F—signifying discharge by agreement. (Def.'s Reply Pl.'s Resp. Mot. Dismiss 4, DN 41). The Code G for a discharge of indebtedness pursuant to a decision or policy of the creditor at issue in this case, as quoted in footnote 2, could also plausibly indicate discharge. *See* 26 C.F.R. § 1.6050P-1(b)(2)(i)(G). Thus, the factual distinction from *Baker* is not fatal for Plaintiff's claims here.

The same reasoning applies to the present case. BBT appears to have acknowledged on the face of the Form 1099-C that Baker's debt had been discharged. The heading "Cancellation of Debt" and the identified event code of "G" suggest as much. Discovery may eventually uncover evidence proving discharge did not in fact occur, but at this stage it would be inappropriate to dismiss Plaintiff's claims because his allegations of discharge are at least plausible. Therefore, BBT's motion to dismiss Plaintiff's FCRA claims will be denied.

B.   **FCRA Claims against TD Bank**

Plaintiff alleges TD negligently and willfully violated the FCRA by continuing to report an allegedly inaccurate past due balance after the debt was charged off. (Am. Compl. ¶ 36). Plaintiff contends that, after Equifax notified TD Bank of Plaintiff's dispute regarding this tradeline, TD Bank failed to "consider any of [his] information, claims or evidence" when it verified its report to the CRAs as accurate. (Am. Compl. ¶ 40). TD moves to dismiss Plaintiff's claim under Fed. R. Civ. P. 12(b)(6) "because the outstanding balance remains due and collectible[]." (TD's Mot. 3). Thus, TD argues that because its report to the CRAs was accurate, it could not have furnished incorrect information in violation of the FCRA. (TD's Mot. 3).

As an initial matter, the Court recognizes that Plaintiff has not addressed TD's arguments in his response. Local Rule 7.1(c) provides that "[f]ailure to timely respond to a motion may be grounds for granting the motion." When a plaintiff fails to respond, "the district court *may* deem the plaintiff to have waived opposition to the motion." *Scott v. Tennessee*, 787 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (emphasis added); *see Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that a party's lack of response to motion or argument is grounds for district court to assume waiver and grant the motion). The Court is not mandated to grant an unopposed motion to dismiss, however, and this is particularly true where

the motion is clearly unmeritorious. *See Mooneyham v. Equifax Info. Servs., LLC*, 99 F. Supp. 3d 720, 723 n.1 (W.D. Ky 2015) ("Uncontested motions to dismiss, however, do not relieve the court of all analysis.").

Plaintiff claims he does not owe the debt, while TD claims he does without citing to any documents or material supporting its assertion. TD cites *Shaw v. Equifax Information Solutions, Inc.*, 204 F. Supp. 3d 956 (E.D. Mich. 2016), and *Bolick v. DFS Services LLC,* No. 10-cv-5211, 2011 WL 4359987 (E.D. Pa. Sept. 16, 2011), in support of its position that Plaintiff's FCRA claims cannot be sustained on the allegation that TD charged off the disputed debt. (TD's Mot. 4). *Shaw* and *Bolick*, however, both dealt with motions for summary judgment, not motions to dismiss. *See Shaw*, 204 F. Supp. 3d at 959; *Bolick*, 2011 WL 4359987, at *2. In both cases, discovery revealed that the reports at issue were indisputably correct, which entitled the movants to judgment as a matter of law under Fed. R. Civ. P. 56(a). *Shaw*, 204 F. Supp. 3d at 962-63; *Bolick*, 2011 WL 4359987, at *2-3.

The present case is before this Court on motions under Fed. R. Civ. P. 12(b)(6), and the Plaintiff and TD disagree regarding the accuracy of TD's report to the CRAs. This disagreement may ultimately be resolved in TD's favor through discovery and reveal that the disputed report is accurate. At this stage of the proceedings, however, granting a Fed. R. Civ. P. 12(b)(6) motion to dismiss regarding this dispute would be premature. TD's motion to dismiss Plaintiff's FCRA claims against it is thus denied.

### C. State Negligence and Defamation Claims

Plaintiff makes additional claims of defamation and negligence under Kentucky law. (Am. Compl. ¶¶ 99-104). BBT and TD seek to dismiss these claims because they are preempted by the FCRA. (BBT's Mot. 10-11; TD's Mot. 4).

This Court follows the temporal approach to preemption under the FCRA. *See Eddins v. Cenlar FSB*, 964 F. Supp. 2d 843, 850 (W.D. Ky. 2013). Under this approach, FCRA claims against furnishers of information are divided into two distinct time frames. In the first time frame—after the furnisher received notice of the dispute—15 U.S.C. § 1681t(b) preempts state law claims relating to the furnishing of the disputed information. *Id.* at 851. In the second time frame—before the furnisher received notice of the dispute—15 U.S.C. § 1681h(e) permits a plaintiff to bring defamation or negligence claims, so long as the plaintiff can establish that the furnisher acted with malice or willful intent to injure. *Id.* "Plaintiff concedes that any claims for defamation and negligence arising subsequent to his May 2018 dispute . . . are preempted . . . ." (Pl.'s Resp. 16).

Plaintiff contends that his negligence and defamation claims which manifested in the time before Defendants were notified of the dispute should survive because they are not preempted under the temporal approach adopted by this Court. (Pl.'s Resp. 16). Even with this, Plaintiff merely makes conclusory allegations that BBT and TD had the willful intent to injure him by reporting allegedly false information to the CRAs. (Am. Compl. ¶¶ 67, 71, 100, 103). Without asserting any facts which would plausibly indicate BBT and TD acted willfully or intentionally or had any motive to do so before receiving notice of any dispute, Plaintiff's state law claims cannot be sustained. *See Carroll v. Midland Funding, LLC*, No. 1:15-CV-00157-GNS, 2016 WL

4030959, at *3 (W.D. Ky. July 26, 2016); *Baker*, 2016 WL 4030964, at *4. Therefore, Plaintiff's state law negligence and defamation claims against BBT and TD will be dismissed.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (DN 25, 30) are **GRANTED IN PART AND DENIED IN PART**. Plaintiff's state law claims for negligence and defamation against Defendants Branch Banking and Trust Co. and TD Bank USA, N.A. are dismissed. Plaintiff's FCRA claims against these Defendants remain, as well as all claims asserted against Defendants Credit First N.A. and Experian Information Solutions, Inc.

Greg N. Stivers, Chief Judge
United States District Court

March 20, 2019

cc: counsel of record